**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**MICHAEL CARTER, DMD**                                                   **PLAINTIFF**

**v.**                                                   **CIVIL ACTION NO. 3:24-CV-183-MPM-RP**


**LIFE DENTAL GROUP, LLC,**
**LD-RIDGELAND, LLC; JEFF HAND;**
**WILLIAM ALIAS; AND**
**MIKE HUGGINS**                                                   **DEFENDANTS**


**ORDER**

This cause comes before the court on plaintiff Michael Carter's motion to amend the case management order (CMO) in this case in order to permit him to file an amended complaint. Defendants have responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, is prepared to rule.

This case involves various state and federal claims arising out of plaintiff's agreement to sell his Ridgeland dental practice to defendants. Aside from a breach of contract claim, plaintiff alleges that defendants committed various acts of misconduct which, he contends, amounted to a breach of the duty of good faith and fair dealing and malicious interference with prospective employment under Mississippi law. While defendants have filed a summary judgment motion as to these state law claims, this court must first consider jurisdictional issues arising from plaintiff's sole federal claim, which he now seeks to withdraw, that defendants violated the provisions of the Sherman Act, set forth in 15 USC §§ 1 to 7. The Sherman Act is, of course, a federal antitrust statute prohibiting unreasonable restraints of trade, and it was plaintiff's initial assertion of a violation of this Act which gave rise to federal jurisdiction in this case. Prior to

1

addressing plaintiff's motion to withdraw his Sherman Act claim, this court will note the factual

context in which it arose.

In describing the facts which gave rise to this case, plaintiff alleges in his complaint that:

> The Defendant LLCs are in the business of buying and operating dental practices. The individual Defendants control the Defendant LLCs, and developed their business model, which is to purchase successful dental practices and then to employ the former owners of the business. Prior to Plaintiff's selling his dental business to his daughter, the Defendant LLCs, acting through the individual Defendants, had attempted, without success, to buy Plaintiff's dental business.
> After Plaintiff sold his dental business to his daughter, Defendants resumed their efforts to purchase the business. Defendants ultimately succeeded in persuading Plaintiff's daughter to sell them the assets of the business in Ridgeland, Mississippi. Defendants, however, needed Plaintiff to remain employed at the business because Plaintiff had developed an excellent reputation as a dentist, and having Plaintiff leave the business would be financially harmful to Defendants.
> In order to induce Plaintiff's daughter to agree to the sale of the business and in order to induce Plaintiff to become an employee of the business, Defendants, acting through Defendant Alias, promised Plaintiff that if he would agree to become an employee of the business, Defendants would retain the name of the business, allow Plaintiff to select and supervise the staff of the business, allow Plaintiff to determine who would be employed in the business, and allow Plaintiff to continue to choose the vendors with whom the business worked. Because of the above promises, Plaintiff agreed to enter an employment contract with Defendant LD-Ridgeland, which was owned and controlled by the other Defendants.
> Soon after Plaintiff became an employee of Defendant LD-Ridgeland, LLC, under the Employment Agreement, Plaintiff learned that Defendants would not keep the promises they had made to induce him to become an employee of the business. Contrary to what Defendants had told Plaintiff to induce him to become an employee, Defendants changed the name of the business, selected the employees of the business, and placed budgetary restrictions on amounts the clinic could spend which were so substantial as to harm patient care. Much more significant than the fact that Defendants breached the promises they made to induce him to become an employee, Defendants also adopted practices which would require Plaintiff to engage in unethical and illegal practices.

[Complaint at 4-5].

In the interest of brevity, this court will omit the alleged "unethical and illegal practices"

which plaintiff contends that defendants sought for him to engage in, but it will note the

allegations which support the Sherman Act claim which is central to the present motion. In this

vein, plaintiff alleged in his original complaint that defendants required him to sign a non-

compete agreement which, he alleges, amounted to an unlawful restraint of trade and a violation of the Sherman Act, as follows:

> The Sherman Act, 15 U.S.C. § 1, prohibits enforcement of contracts which are "in restraint of trade or commerce among the several States. . . ." This prohibition on restraints of trade prohibits all "undue" restraints of trade and disallows "unreasonable" restraints on trade. The noncompete agreement is a per se violation of the Sherman Act. Alternatively, the non-compete fails the "rule of reason" analysis. It prohibits Plaintiff from engaging in his chosen profession of dentistry, within ten (10) miles of the area where Plaintiff worked, and unreasonably keeps Plaintiff from having his own patients and, in effect, prohibits patients from choosing their dentist. The agreement restrains interstate commerce, since many of Plaintiff's patients are out-of-state patients, and would otherwise travel to utilize Plaintiff's services as a dentist. Furthermore, the supplies used in the dental practice and purchased by the business are manufactured in substantial part by out-of-state manufacturers. The employment agreement, Exhibit "A," is also an unreasonable restraint of trade because it arbitrarily gives Plaintiff's patients to corporate entities. It denies Plaintiff's patients choices as to who their dentist will be. By denying consumers choices among dentists, the employment agreement unreasonably restrains trade among the several states, it artificially affects the ability of patients to travel across state lines to a dentist of the choice, and causes patients not to travel to central Mississippi from other states to obtain Plaintiff's services.

[Complaint at 7].

With these allegations in mind, this court now turns to plaintiff's request to file an amended complaint which 1) omits his Sherman Act claim and 2) alleges additional facts in support of his breach of contract claim. In doing so, this court emphasizes at the outset that the parties are in agreement that, if it grants plaintiff's request to file an amended complaint asserting purely state-law claims, then it must thereupon dismiss this case for lack of subject matter jurisdiction. Indeed, defendants concede in their brief that:

> As Plaintiff has argued, the Supreme Court has recently held that when the Plaintiff amends the complaint and removes all federal claims, the district court must dismiss the state law claims without prejudice because it no longer maintains supplemental jurisdiction under 28 U.S.C. 1367. *See Royal Canin USA Inc. v. Wullschleyer,* 145 S. Ct. 41 (2025). If Plaintiff's motion is granted, dismissal is certain under the *Royal Canin* opinion.

[Brief at 4]. The Supreme Court's decision in *Royal Canin* was consistent with its earlier decision in *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–474, 127 S.Ct. 1397 (2007) where it held that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." While the U.S. Supreme Court's decision in *Royal Canin* considerably simplifies the jurisdictional issues in this context, this court must still confront the fact that defendants oppose any amendment which might serve to destroy federal jurisdiction in this case. In taking this position, however, defendants must confront a considerable amount of adverse federal authority which supports the liberal amendment of pleadings in civil lawsuits.

Rule 15(a)(2) of the Federal Rules of Civil Procedure states that "[t]he court should freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). Moreover, the Fifth Circuit has long provided exceedingly permissive standards for motions to amend, emphasizing that "[i]n the context of motions to amend pleadings, 'discretion' may be misleading, because [the Rule] evinces a bias in favor of granting leave to amend." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)) (internal quotes omitted).

While acknowledging this precedent, defendants emphasize in their brief that, under the case management order (CMO) in this case, the deadline for motions to amend the pleadings expired on September 30, 2024, and plaintiff's motion to amend was not filed until a year later. [Docket entries 22 and 87]. In light of these facts, defendants appear to be correct in arguing that the relevant standard is that applicable to motions to amend the scheduling order under Federal Rule of Civil Procedure 16(b), rather than the standards applicable to Rule 15 motions to amend.

4

*S&W Enterprises, LLC v. South Trust Bank of Alabama, NA*., 315 F.3d 533, 535-36 (5th Cir. 2003). As to such motions to amend under Rule 16(b), defendants note that the governing standard is as follows:

> Because plaintiff's motion was filed after the expiration of the deadlines, Plaintiff must establish good cause to amend the scheduling order under Federal Rule of Civil Procedure 16(b). *S&W Enterprises, LLC v. South Trust Bank of Alabama, NA*., 315 F.3d 533, 535-36 (5th Cir. 2003). Rule 16(b) provides that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge." *Id.* at 535. Only upon a showing of good cause will the more liberal standard of Rule 15(a) apply to the court's decision to grant or deny leave. *Id.* * * * To determine the existence of good cause, the court must consider: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S&W Enters*., 315 F.3d at 536.

[Brief at 4-5].

While defendants may be correct that the four-part Rule 16(b) standard is marginally more stringent than the Rule 15 standard, it seems clear that the FRCP's amendment standards remain quite liberal even after the CMO deadline for such amendments has passed. Indeed, defendants themselves acknowledge in their brief that "[t]he court has wide discretion to weigh and balance the Rule 16(b) factors, including the discretion to find that any one factor outweighs the others." Brief at 5, citing *E.E.O.C. v. Serv. Temps Inc*., 679 F.3d 323, 334 (5th Cir. 2012). Moreover, plaintiff notes that the Federal Rules of Civil Procedure provide for the liberal amendment of pleadings even *at trial*. Specifically, FRCP 15(b) provides that:

> If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits.

*Id*. Clearly, the fact that the Federal Rules of Civil Procedure provide that leave to amend should be "freely granted" at trial makes it clear that the passing of the CMO deadline for amendments

5

does not greatly change the amendment-friendly approach of the FRCP. It is in this quite permissive legal context which this court must consider plaintiff's Rule 16(b) motion to amend the CMO to assert an amended complaint in this case.

Before addressing the four 16(b) factors individually, this court will note the circumstances of this case which, it believes, support a finding of "good cause" for plaintiff to amend the scheduling order in this case. In this vein, this court initially notes that, having reviewed the pleadings and record, it has no reason to believe that plaintiff's initial assertion of a Sherman Act claim was the product of either gamesmanship or bad faith on his part. Indeed, this court can discern no reason why plaintiff would have originally asserted such a claim unless he genuinely believed that it had potential merit. Moreover, while this court will assume that plaintiff's Sherman Act claim could not survive a motion for summary judgment, it does not regard the claim as having been frivolous. To the contrary, this antitrust claim strikes this court as being one which, while ultimately acknowledged to lack merit, arose from a genuine belief on plaintiff's part that an unlawful restraint on trade arose from the non-compete agreement in this case.

This court can likewise discern no gamesmanship or bad faith arising from plaintiff's subsequent decision, after conducting discovery and obtaining new counsel in this case, to seek to drop his Sherman Act claim. In describing the circumstances which led him to make this decision, plaintiff writes that:

> 5. After the amendment deadline had passed but during discovery, Plaintiff's former counsel withdrew from representing the Plaintiff and he had to obtain new counsel. Thereafter, the undersigned entered an appearance and engaged in discovery.
> 6. In discovery the Plaintiff was presented with evidence about the extent of competition in the field which rendered the Sherman Act claim unsupportable in the undersigned's opinion.

6

7. In addition, the Plaintiff in discovery uncovered clear evidence of additional and ongoing breaches of his contract which were not explicitly spelled out in the original complaint.

8. For this reason, Plaintiff determined that the Complaint should be amended to drop the Sherman Act claim and add the additional details concerning the breach of contract.

[Brief at 2].

In further explaining the timing and circumstances surrounding his decision to drop his

lone federal claim, plaintiff writes that:

The federal claim in this case appeared to be a good one until recent developments. This explains the timing of this motion. First was "Defendants' Third Supplemental Disclosures, served on July 23rd, 2025," which, for the first time, revealed the factual basis for their argument that their non-compete had no significant impact on the competitive marketplace for dentists. [92] at 6 (citing [78]). Second is the status of the FTC's rule banning non-competes. *Ryan, LLC v. FTC*, No. 24-10951 (5th Cir.), and *Properties of the Villages v. FTC*, No. 24-13102 (11th Cir.). The final decision of the FTC acceding to the vacation of the rule was made on September 5, 2025, but had been rumoured in the preceding few weeks. Meanwhile, it did not become clear until the 30(b)(6) deposition on July 11, 2025, that there were ongoing breaches of contract that could be clarified in the complaint. This combination of events in the July to September time period explains why the motion was not filed until September.

[Reply brief at 2].

In his reply brief, plaintiff notes an additional legal consideration which led him to seek

to withdraw his Sherman Act claim, writing that:

Here, amendment is preferred to other forms of dismissal because it avoids creating any confusion in application of the savings statute under Mississippi law, Miss. Code Ann. § 15-1-69. Although Plaintiff's position is that a Rule 41 voluntary dismissal on the basis of jurisdiction is covered by the savings statute since it is substantively the same as dismissal by the court for lack of jurisdiction - *see Crawford*, *supra* - it is possible that the Mississippi courts would view it differently, thus prejudicing Plaintiff. Dismissing the complaint after amendment would avoid creating a potentially prejudicial litigation issue about the statute of limitations.

[Reply brief at 2]. While this court will not comment on the merits of a statute of limitations

issue which is not before it, it does believe that the circumstances of this case reflect good faith

7

attempts on the part of plaintiff's new counsel to protect his client's interests based upon his best understanding of the facts and law. That is what lawyers are expected to do in any lawsuit.

This court's belief that plaintiff proceeded in a proper manner in this case is also informed by the steps which he took upon realizing that his Sherman Act claim lacked merit. In describing his actions in this regard, plaintiff writes that:

> Counsel for the Plaintiff promptly raised with counsel for Defendants the possibility of dismissing the case and refiling in state court and asked if it would be opposed. Defendants indicated that it would be opposed. Exhibit 1. Plaintiff then drafted and filed this motion [to amend] in September. This was before Defendants filed any dispositive briefs. In short, with a month to digest and analyze the supplemental disclosures and legal developments, and another couple weeks to confer with opposing counsel and draft an opposed motion on the issue, the timing here is amply explained.

[Reply brief at 3].

In support of his assertion that he consulted with counsel for defendants before moving to amend his complaint, plaintiff has attached an August 29, 2025 email to his counsel from defense counsel. That email states that:

> Joel, as per our conversation after the deposition of Shawna Reynolds, I have discussed your request that we consider whether we will agree to a Rule 41 voluntary dismissal of the antitrust allegations in the Complaint (I assume with prejudice) and dismissal without prejudice of the state law claims that Dr. Carter intends to refile in state court. The decision has been made not to agree to that request. I will be available Tuesday and Wednesday next week if we need to discuss.
> Thanks
> Randy

[Exhibit 1]. Defendants were thus aware on August 29, 2025 that they could obtain a dismissal of plaintiff's anti-trust claim for free, but they nevertheless chose, over a month later, to file a motion for summary judgment to dismiss this and other claims. By that time, plaintiff had already filed the instant motion to amend, in which he seeks essentially the same result which he had tried to obtain from defendants amicably.

8

It appears that, in taking their respective positions, the parties are jockeying for some real or perceived procedural advantage, and this court does not fault any of them for doing so. Once again, that is what lawyers do in civil cases. Still, it seems clear to this court that it is plaintiff's jockeying which is consistent with considerations of judicial economy, and it is defendants' jockeying which has required both sides to expend resources in filing multiple motions relating to an antitrust claim which all parties now recognize as meritless. This court believes that promoting judicial economy is a worthy goal, and it therefore finds itself more sympathetic to plaintiff's jockeying than to that of defendants. Judicial economy considerations aside, plaintiff's position is greatly furthered by the fact that, once again, the FRCP endorses the liberal amendments of pleadings or CMOs, even as late as trial.

This court notes parenthetically that, while it has discussed the issue of gamesmanship at some length, certain language in *Royal Canin* suggests that the same rules apply *even if* an amendment is the result of gamesmanship. Indeed, the U.S. Supreme Court made it clear that the plaintiff in *Royal Canin* had dropped her federal claim in order to defeat federal question jurisdiction, writing that:

> Royal Canin … removed the case to federal court based on the asserted violations of the FDCA. That removal properly brought to the District Court not only Wullschleger's FDCA claims, but also her factually intertwined state-law claims. The parties were thus set to litigate the entire suit in federal court. But that is not where Wullschleger wanted the case to be resolved. So she countered Royal Canin's move: She amended her complaint to delete its every mention of the FDCA, leaving her state claims to stand on their own. And with that amended, all-state-law complaint in hand, she petitioned the District Court to remand the case to state court.

*Royal Canin*, 604 U.S. at 28–29. It thus appears that the plaintiff's actions in *Royal Canin* could be regarded as a form of procedural gamesmanship, but nothing in the Supreme Court's ruling indicates that this made any difference to the Court's jurisdictional analysis or cast doubt upon the plaintiff's ability to amend her complaint. Moreover, in the *Rockwell* decision relied upon by

9

*Royal Canin*, the Supreme Court made it clear that "[r]espondents clarified their allegations even further in a statement of claims which became part of the final pretrial order and which superseded their earlier pleadings." *Rockwell*, 549 U.S. at 465. Needless to say, an amendment of claims in the pretrial order represents a much more delayed amendment than the one in this case, and yet there is no suggestion in *Rockwell* that this made any difference to the Supreme Court's analysis.

In light of *Royal Canin* and *Rockwell*, this court is aware of no reason why, in ruling upon the motion to amend the CMO in this case, it should apply any different analysis based upon its knowledge of the jurisdictional implications of its ruling. Certainly, defendants offer this court no authority suggesting that it should do so. That being the case, this court will simply approach plaintiff's motion to amend in the same manner which it would approach any other motion to amend which is filed before it. Considered in this light, this court regards the motion in this case as being one which it would routinely grant under similar circumstances. Indeed, this court struggles to recall a case in which it denied a plaintiff's request to drop a particular claim in an amended complaint *before* a defendant had filed a dispositive motion seeking its dismissal, regardless of the deadlines in the CMO. Moreover, this court struggles to come up with a reason why it would even *consider* denying such a request, given that no apparent purpose would be served by expending judicial resources (and those of the parties) in litigating claims which a plaintiff has conceded to lack merit. Indeed, this court believes that plaintiffs and their counsel should be *encouraged* to drop claims which they conclude to lack merit based upon their evaluation of the facts developed in discovery.

This court believes that defendants would have a stronger argument in opposing amendment if the record established that plaintiff had only filed his motion to amend *after*

10

defendants had gone to the expense of paying their counsel to draft a motion for summary judgment. Under such circumstances, this court might conceivably conclude that it should allow defendants to prevail on the motion which they had gone to the time and expense of drafting, rather than permitting the plaintiff to, in effect, say "you can't fire me- I quit!" As discussed above, however, that is not the situation here.

Having discussed some of the generalized considerations which inform its analysis of these issues, this court now turns to the 16(b) amendment factors. Once again, these factors are as follows:

> To determine the existence of good cause, the court must consider: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."

*S&W Enters.*, 315 F.3d at 536.

With regard to the first factor, namely "the explanation for the failure to timely move for leave to amend," this court believes that plaintiff has provided good faith reasons, in the form of defendant's supplemental discovery responses and the clarification of the law in relating to the FTC's rule banning non-compete agreements, which led him to conclude that his claim lacked merit. Once again, each of these events occurred in the summer of 2025, which is, of course, well after the deadline for amendments in the CMO had passed. In their brief, defendants appear to concede that their July 23, 2025 responses provided plaintiff with new information in this context, writing that:

> As to the first factor, Plaintiff's memorandum includes what might be considered an explanation for failure to timely move for leave to amend. Plaintiff asserts that he has decided to withdraw the Sherman Act claim because "[i]n discovery the Plaintiff was presented with evidence about the extent of competition in the field which rendered the Sherman Act claim unsupportable…". This evidence was produced along with Defendants' Third Supplemental Disclosures, served on July 23rd, 2025, three months before Plaintiff filed this motion.

[Brief at 5-6].

While thus appearing to partially concede this point, defendants note that the portion of plaintiff's complaint relating to his Sherman Act claim did not specifically allege that "enforcing the noncompete provision of the Employment Agreement had a negative effect upon 'competition in field'" and that allegations in this regard are only to be found later in the complaint. [Brief at 6]. This strikes this court as being a rather technical and hair-splitting objection, since, in its experience, it is very common to have allegations relating to a particular claim tacitly rely upon allegations found elsewhere in the complaint. This court therefore concludes that plaintiff has demonstrated good cause for not realizing until after the CMO deadline had passed that his Sherman Act claim lacked merit.

With regard to the second factor, namely "the importance of the amendment," it seems clear to this court that plaintiff's Sherman Act claim forms a central part of his lawsuit, so much so that he listed it as the first claim in his original complaint. [Complaint at 7]. That being the case, plaintiff's decision to withdraw this claim certainly appears to be "important" to the litigation of this case, and this court accordingly concludes that the second factor is met. This court now turns to the third factor, namely the "potential prejudice in allowing the amendment." As to this factor, this court agrees with plaintiff's argument that "[t]he additional time wasted by defendants in needlessly briefing this motion, needlessly briefing the forthcoming dispositive motions, and then re-litigating in state court, are completely self-inflicted injuries rooted in defendants' hopeless effort to retain a federal forum for a case where there simply is no federal power to hear it." [Reply brief at 3]. This court further agrees that defendants are not in a position to argue that they were prejudiced by their own actions, and it therefore concludes that the third factor is met as well. This court's conclusion that no prejudice exists in this regard

12

moots the fourth factor, relating to cure, and it therefore finds that all of the Rule 16(b) factors support amendment in this case. This court accordingly concludes that plaintiff's motion to amend is well taken and should be granted.

As a final point, this court notes that, even if it were to deny amendment and grant defendant's summary judgment motion relating to plaintiff's Sherman Act claim, this would very likely not change the end result, namely, the remaining claims being litigated in state court. This is because, as acknowledged by defendants, it is well-settled that where all federal claims are dismissed prior to trial, 28 U.S.C. § 1367(c)(3) grants this court discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. In the Fifth Circuit, the "general rule" is that courts should "decline supplemental jurisdiction [over state law claims] when all federal claims are dismissed or otherwise eliminated from a case." *Certain Underwriters at Lloyd's v. Warrantech Corp.*, 461 F.3d 568, 578 (5th Cir. 2006).

This court notes that § 1367(c) provides that, in deciding whether to follow this "general rule," district courts should consider whether (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." Importantly, the four § 1367(c) factors are listed in the disjunctive, which means that only one of them needs to be met in order to grant a district court discretion to decline to exercise supplemental jurisdiction.

While it is unnecessary to analyze an issue which is not before it, it appears to this court on first blush that the first and third factors would clearly be met even in the event that it were to deny amendment and grant defendants' summary judgment motion as to plaintiff's Sherman Act

13

claim. The reasons for this court's conclusion in this regard seems self-evident with regard to the third factor. With regard to the first factor, it seems clear that this case involves a very particular and novel set of facts relating to the purchase of a dental practice and specific promises and actions which were allegedly made in the course of doing so. This court believes that these facts would likely give rise to complex and difficult issues relating to whether Mississippi business torts such as malicious interference with future employment prospects and breach of the duty of good faith and fair dealing are implicated by the allegations in this case. Moreover, it is clearly preferable for difficult state law issues such as these to be resolved by state courts, since they have greater expertise in this context, and the Mississippi Supreme Court is the only court authorized to create new law in this context, without the need for *Erie* guesses.

It therefore seems highly likely to this court that the remaining state law claims in this case would be litigated in state court regardless of its ruling on the motion to amend. Nevertheless, this court concludes that plaintiff's motion to amend his complaint to withdraw his Sherman Act claim is well taken and should be granted. Having dismissed the claim which provides the sole basis for federal jurisdiction in this case, the remainder of this lawsuit will be dismissed without prejudice for lack of jurisdiction.

It is therefore ordered that plaintiff's motion to amend is granted, and, in light of this amendment, this case is hereby dismissed for lack of jurisdiction.

A separate judgment will be entered this date, pursuant to Fed. R. Civ. P. 58.

This, the 13th day of April, 2026.

/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI

14